145 P.3d 768

**Cheryl S. FERREIRA, Plaintiff–
Appellee, Cross–Appellant**

v.

**Nelson C. FERREIRA, Defendant–
Appellant, Cross–Appellee.**

**No. 26444.**

Intermediate Court of Appeals of Hawai'i.

June 30, 2006.

Gerald T. Johnson, Wailuku, on the briefs, for Plaintiff–Appellee, Cross–Appellant.

Nelson C. Ferreira, on the briefs, Pro Se Defendant–Appellant, Cross–Appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellee/Cross–Appellant[1] Cheryl Sue Ferreira, now known as Cheryl Sue Marshall (Cheryl), appeals from the family court's February 10, 2004 Amended Decree Granting Absolute Divorce and Awarding Child Custody (Amended Decree). We affirm the dissolution of the marriage. We vacate the spousal support part of the Amended Decree and remand that part for reconsideration. We conclude that the Amended Decree is not final and appealable with respect to the following parts: (1) child custody, visitation, and support, and (2) the division and distribution of property and debts.

## BACKGROUND

Although Cheryl and Defendant–Appellant/Cross–Appellee Nelson Ferreira (Nelson) were married on December 10, 1983, their economic partnership began in 1975. Cheryl and Nelson have five children: Kelly, born on June 10, 1978; Stacey, born on November 15, 1983; Jaime, born on March 28, 1985; Ashley, born on February 13, 1987, and Devin, born on April 6, 1991.

Cheryl filed a Complaint for Divorce on November 9, 2001. The trial in this case was held on May 15, 2003[2]. On February 10, 2004, the court entered (1) Amended Findings of Fact and Conclusions of Law (AFsOF and ACsOL), and the Amended Decree.

The Amended Decree awarded Cheryl sole legal and physical custody of the minor children subject to Nelson's specified rights of visitation and ordered, in relevant part:

### V. Child Support.

A. [Cheryl] is entitled to child support for [Devin], [Ashley], and so long as she is living in [Cheryl's] household and pursuing a full-time education, as provided herein, for [Jaime], based upon the respective income of the parties and the Child Support Guidelines.

B. For purposes of determining child support [Nelson's] annual, self employment, net income before deductions for federal and state income taxes is deemed to be $221,810.45. [Cheryl's] gross monthly income is imputed to be $2000.... The Child Support Enforcement Agency is hereby made a party to this action for the limited purpose of child support. [Nelson] shall make all child support payments through the Child Support Enforcement Agency.

C. Devin has been diagnosed as being in need of special educational and medical attention.... Devin's special needs have cost [Cheryl] to date $4,810.63. [Nelson] shall fully reimburse [Cheryl] for said expenditures[.] The future rea-

---

1. On May 2, 2005, the Hawaiʻi Supreme Court entered an order granting a motion by Defendant–Appellant/Cross–Appellee Nelson C. Ferreira (Nelson) to dismiss his appeal.

2. Judge Barclay E. MacDonald presided.

sonable costs for Devin's special needs shall be paid by [Nelson] in addition to the child support determined pursuant to the Child Support Guidelines. **Until further order of the Court said special needs payment shall be $500 per month** paid through the Child Support Enforcement Agency. . . .

D. Educational Support. [Nelson] shall provide all necessary educational support for Stacey, Jaime, Ashley and Devin. . . . The reasonable costs of tuition, books and reasonable living expenses under suitable conditions while attending such educational pursuits shall be paid by [Nelson]. . . . In the event any of the children continue his/her post high school education outside the State of Hawai'i, [Nelson's] contribution for tuition only may be limited to the current costs of tuition at the University of Hawai'i for an equivalent course of study. [Nelson] shall be responsible for such child's reasonable living expenses while attending school out of state, as above provided.

E. Medical and Dental. [Nelson] shall provide adequate medical and dental insurance coverage for the parties' minor children. Incidental fees for visits and laboratory tests shall also be paid for by [Nelson]. Any additional medical and dental expenses not covered by insurance shall be paid twenty-five percent (25%) by [Cheryl] and seventy-five (75%) by [Nelson]. . . .

F. Life Insurance. [Nelson] shall be required to maintain life insurance coverage with the children as the primary beneficiaries in an amount not less tha[n] $250,000 per supported child, so long as [Nelson] has a child or educational support obligation.

3. These totals are one-half of the value of the assets that were proven to be missing. The Amended Findings of Fact (AFsOF) filed on February 10, 2004, state, in relevant part:

47. . . . .

. . . The Court finds . . . that the following marital property was removed and its use and whereabouts are unexplained by [Nelson], and therefore [Plaintiff–Appellee/Cross–Appellant Cheryl S. Ferreira (Cheryl)] should be awarded one-half.

. . . .

G. Tax Dependency. [Nelson] shall be entitled to claim the two minor children and the two adult children, Stacey and Jaime, as dependency exemptions each and every year that [Cheryl] is unemployed. In the event [Cheryl] becomes employed, she may claim ASHLEY as her dependency exemption, and [Nelson] may then claim Devin as his dependency exemption.

## VI. Alimony.

[Nelson] shall pay to [Cheryl] alimony in a total amount of $309,600. Payments shall be at least $4,300.00 per month, to be paid no later than the first day of each and every month, commencing November 1, 2003. However, a portion of the total amount to be paid shall be in the form of a lump sum payment equal to the amount that the net proceeds of the sale of 3050 Alaneo exceeds $127,349.53. . . .

## VII. Division of Marital Property.

. . . .

C. After award of the vehicles, as abovestated, and an adjustment of one-half of the $10,250.00 for the Harley, to be added to [Cheryl's] share to equalize the unequal division of the autos and an award of the retirement accounts, as above stated, [Cheryl] remains **entitled to an award of $760,655.47.** This includes one-half of the bank accounts ($25,128.19/2=$12,564.10[.] )

D. Equalization award.

1. The Court finds that [Cheryl] is entitled to an additional award of one-half the missing assets of $58,193.04 and one-half of the known missing rental income of $42,181.72.[3] [Cheryl] is therefore entitled to an award of the

| **Total Missing** | **$116,386.07** |
|---|---|
| **[Cheryl's] one-half** | **$ 58,193.04** |

48. . . . .

The Court therefore finds . . . that in 2000 [Nelson] received $84,363.43 in unreported rental income for his Kaanapali Alii Unit # 415 and unreported rental management income, which was diverted from the marital assets. [Cheryl's] one-half therefore equals $42,181.72.

remaining assets in the amount of $861,030.22.[4]

2. During the period of the divorce [Cheryl] has reasonably incurred necessary debts to meet her needs and the needs of the children in the amount of $7,357.35. Moreover, [Cheryl's] costs incurred to date for Devin's special educational testing and needs [amount to] $4,810.63. It is equitable that those debts be paid from the marital estate, and therefore, that [Nelson] pay one-half those debts from his share, or $6,083.99. **No later than January 2, 2004 [Nelson] shall pay to [Cheryl], $6,083.99.**

E. **Division of Real Property.**

. . . .

3. 3050 Alaneo Place. To effectively accomplish the fair and just division of

. . . .

53. Diverted, unreported and hidden assets and income are valid and relevant considerations which would require this Court to deviate from Section 580–47, *Hawaii Revised Statutes.*

54. ... [T]he Court finds that [Cheryl] is entitled to an additional award of one-half the missing assets of $58,193.04 and one-half of the known missing rental income of $42,181.72.

Notwithstanding AFOF no. 53, there is no indication that the court imposed any penalty on Nelson for hiding assets and income. If a party who hides assets suffers no penalty for doing so, what is a party's incentive not to do so?

4. 760,655.47 plus $58,193.04 plus $42,181.72 equals $861,030.23.

5. Hawaii Revised Statutes § 580–47 (Supp.2005) states, in relevant part:

Support orders; division of property. (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the

the marital estate and to effect the requirements of Section VI above, regarding alimony, the real property of the parties located at 3050 Alaneo Place, ... shall be immediately sold by the parties. The net proceeds from sale shall be awarded to [Cheryl] in accordance with and pursuant to Section VI above....

. . . .

IX. **Attorneys' Fees.** Commensurate with Finding of Fact No. 69, [Cheryl] may make an appropriate request for attorneys fees, expert fees and investigation expenses. Otherwise, each party shall bear their own attorney's fees and costs.[5]

. . . .

attorney's fees, costs, and expenses incurred by each party by reason of the divorce.

It appears that "after finding that good cause exists," the family court may postpone its decision on the question whether it will order one party to pay "the attorney's fees, costs, and expenses incurred by each party by reason of the divorce."

Hawai'i Rules of Appellate Procedure Rule 4 (Supp.2006) states, in relevant part:

(a) **Appeals in Civil Cases.**

(1) TIME AND PLACE OF FILING. When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order.

. . . .

(2) PREMATURE FILING OF APPEAL. In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal.

(3) TIME TO APPEAL AFFECTED BY POST–JUDGMENT MOTIONS. If, not later than 10 days after entry of judgment, any party files a motion that seeks to reconsider, vacate, or alter the judgment, or seeks attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

The notice of appeal shall be deemed to appeal disposition of all post-judgment motions that are filed within 10 days after entry of judgment.

The 90–day period shall be computed as provided in Rule 26.

In the instant case, the Amended Decree Granting Absolute Divorce and Awarding Child

. . . .

D.   Taxes and Tax Consequences.

. . . .

5.   Withdrawal from Retirement Account. [Nelson] shall be solely responsible for all taxes incurred as a result of early withdrawal from retirement accounts prior to the Decree.

(Footnotes added; emphases in the original.)

Cheryl filed a notice of appeal on March 11, 2004. This case was assigned to this court on January 9, 2006.

## RELEVANT RULE GOVERNING APPELLATE JURISDICTION

■ Hawaii divorce cases involve a maximum of four discrete parts: (1) dissolution of the marriage; (2) child custody, visitation, and support; (3) spousal support; and (4) division and distribution of property and debts. *Black v. Black*, 6 Haw.App. 493, 728 P.2d 1303 (1986). In *Cleveland v. Cleveland*, 57 Haw. 519, 559 P.2d 744 (1977), the Hawaii Supreme Court held that an order which finally decides parts (1) and (4) is final and appealable even if part (2) remains undecided. Although we recommend that, except in exceptionally compelling circumstances, all parts be decided simultaneously and that part (1) not be finally decided prior to a decision on all the other parts, we conclude that an order which finally decides part (1) is final and appealable when decided even if parts (2), (3), and (4) remain undecided; that parts (2), (3), and (4) are each separately final and appealable as and when they are decided, but only if part (1) has previously or simultaneously been decided; and that if parts (2), (3), and/or (4) have been decided before part (1) has been finally decided, they become final and appealable when part (1) is finally decided.

Custody was entered on February 10, 2004. Thirty days later, on March 11, 2004, Cheryl filed (1) Plaintiff's Motion for Attorney's Fees and Costs of Litigation and (2) a Notice of Appeal. The motion was filed later than ten days after entry of the judgment so it did not extend the time for filing the notice of appeal. On May 3, 2004, the court entered the Order Denying Plaintiff's Motion for Attorney's Fees and Costs of Litigation. This order states, in relevant part:

IT IS NOW HEREBY ORDERED, ADJUDGED, AND DECREED THAT, because the

*Eaton v. Eaton,* 7 Haw.App. 111, 118–19, 748 P.2d 801, 805 (1987) (footnote omitted).

## DISCUSSION AND DECISIONS

For the following reasons, we conclude that although the Amended Decree is final and appealable with respect to the dissolution of the marriage and spousal support, it is not a final and appealable decree with respect to child custody, visitation, and support or the division and distribution of property and debts.

### I.

■ With the exception of the "special needs payment", the Amended Decree does not decide the dollar amount of the child support to be paid. It appears to leave that decision to the State of Hawai'i Child Support Enforcement Agency (CSEA). We conclude that the court is not authorized to delegate this duty to the CSEA. Hawaii Revised Statutes § 571–52.5 (1993) states as follows:

**Guidelines to determine child support amounts.** When the court establishes or modifies the amount of child support required to be paid by a parent, the court shall use the guidelines established under section 576D–7, except when exceptional circumstances warrant departure.

### II.

■ In Section VII. C., the Amended Decree says that Cheryl is entitled to an award of $760,655.47 but neither the AFsOF nor the Amended Decree finds all of the ingredient values or lists the assets to which those ingredient values relate.

### III.

The Amended Decree, after awarding various dollar values to Cheryl in addition to the

Court now lacks jurisdiction in this matter due to the filing of the Notices of Appeal by both parties, and because [Cheryl] has failed to provide any evidence on which the Court could base a determination that the requested attorney's fees and costs of litigation were reasonable and necessary, Plaintiff's Motion for Attorney's Fees and Costs of Litigation be, and it hereby is, denied. PROVIDED, HOWEVER, THAT [Cheryl] may refile said Motion upon the conclusion of the parties' appeals.

$760,655.47, states in Section VII. D. that Cheryl is entitled to an award of assets in the amount of $861,030.22 plus an additional $6,083.99. It then says that Nelson shall pay the $6,083.99 to Cheryl no later than January 2, 2004. It does not specify how Cheryl will receive the $861,030.22 balance. The Amended Decree awards the residence at 306 Ekoa Place to Cheryl. AFOF no. 15 says that the fair market value of this property is $757,500. AFOF no. 17 says that this property is subject to a $23,819.31 mortgage and its net market value is $733,680.69.[6] Assuming the $861,030.22 includes the $733,680.69, the Amended Decree does not specify how Cheryl will receive the $127,349.53 balance due.

## IV.

■ AFOF No. 46 finds that the net market value of 3050 Alaneo Place is $258,773.28 ($399,000 minus a mortgage value of $117,226.72). Section VII. E. 3. of the Amended Decree orders that

[t]o effectively accomplish the fair and just division of the marital estate and to effect

the requirements of Section VI above, regarding alimony, the real property of the parties located at 3050 Alaneo Place, ..., shall be immediately sold by the parties. The net proceeds from sale shall be awarded to [Cheryl] in accordance with and pursuant to Section VI above.

Section VI of the Amended Decree says that "[Nelson] shall pay to [Cheryl] alimony in a total amount of $309,600.... However, a portion of the total amount to be paid shall be in the form of a lump sum payment equal to the amount that the net proceeds of the sale of 3050 Alaneo exceeds $127,349.53." There are two problems. First, nothing is said regarding the distribution of the $127,349.53.[7] Second, 3050 Alaneo Place is marital property. The court must divide and distribute the net proceeds of its sale. Any net proceeds awarded to Cheryl cannot be used by Nelson to partially satisfy his spousal support obligation to Cheryl.

## CONCLUSION

Accordingly, with respect to the February 10, 2004 Amended Decree Granting Absolute

---

6. The AFsOF state, in relevant part:
56. It is in all parties' best interest, including the children, for [Cheryl] to become gainfully employed.
57. However, as a result of the property division in this divorce, [Cheryl] will become financially independent and may never need to work or work full time.
. . . .
61. The income imputed to [Cheryl] is $2,000. Upon divorce [Cheryl's] net worth will be in excess of $950,000. [Cheryl] will have the ability to substantially restructure her assets and debt, as she wishes, to place a substantial portion in liquid form. Taking judicial notice that the interest rate on 30 year treasury bills at the time of this decree is approximately 5%, it is reasonable to expect and impute earnings and appreciation on [Cheryl's] total net assets of approximately $47,000 per year over the long term, or approximately $3,900/month. There are many possible options available to [Cheryl] to access or defer access and use of such appreciation and income. Combined with her imputed earnings, [Cheryl] should be able to average, over the long term, income and/or appreciation of approximately $5,900 per month. Clearly a portion of this appreciation will be tied up in her residence and possibly in other real property. But the allocation, the immediacy of access and the extent of deferral is largely up to [Cheryl]. It is fair and reasonable that in addition to child support [Nelson] pay to [Che-

ryl] $4,300 per month for a period of six years to at least provide [Cheryl] with the opportunity to further her education and improve her employment skills and to provide her with an opportunity to continue her lifestyle on an approximately equal basis with [Nelson], given his earning power and assets, hidden or otherwise, and his obligations hereunder, and to have the assistance ended soon enough to motivate [Cheryl] to take appropriate steps to improve her earning power. Due to the manifest communication difficulties between the parties it is fair and just that, a portion of same shall be advanced in the form of a lump sum payment upon the closing of the sale of 3050 Alaneo, as provided in the Decree herein.
AFOF No. 17 finds that the net value of 306 Ekoa Place is $733,680.69. That $733,680.69 appears to be included in Cheryl's $950,000+ net worth. The court did not explain how Cheryl can maintain a residence for herself and the children while making income from the $733,680.69 net value of the 306 Ekoa Place residence or its appreciation, if any.

7. In the answering brief, in his property division and distribution chart, Nelson indicates his understanding that the $430,000 value of 3050 Alaneo Place was awarded as follows: $175,725.83 was awarded to Nelson and $254,274.17 was awarded to Cheryl, but Cheryl was obligated to pay the $115,000 mortgage and the $15,457 closing costs so the net to Cheryl was $123,817.17.

Divorce and Awarding Child Custody, we (1) affirm the dissolution of the marriage; (2) conclude that it is not final and appealable with respect to (a) child custody, visitation, and support, and (b) the division and distribution of property and debts; and (3) in light of the discussion in footnote 6 above, and because the decision as to spousal support is dependent on the decisions relating to child custody, visitation, and support, and the division and distribution of property and debts, we vacate the spousal support part of the Amended Decree and remand that part for reconsideration.

